[No. 1710-2. Division Two. April 20, 1976.]

ATLAS BUILDING SUPPLY COMPANY, INC., *Respondent*, v.
FIRST INDEPENDENT BANK OF VANCOUVER, *Appellant*.

*James L. Murch* and *Earl W. Jackson,* for appellant.

*James I. Holland* (of *Hall & Holland*), for respondent.

PEARSON, J.—This action for conversion was brought by the plaintiff, Atlas Building Supply Company (Atlas), to recover $1,500, the amount of a check on which its signature had been forged and the proceeds credited to the account of the forger, against the defendant, First Independent Bank of Vancouver. On appeal from an adverse judgment, defendant contends the trial court erred in failing to find Atlas had ratified its unauthorized endorsement or that it was equitably estopped from asserting a claim against the defendant. For the reasons stated below, we find the trial court was correct in its determinations and affirm the judgment.

The facts involved in this action are not in substantial dispute. Harold Bruhn, d/b/a Vancouver Interiors (Vancouver), opened a drywall subcontracting business in Vancouver, Washington in March 1973. Subsequently, he was awarded a contract[1] by Cougar Development Company to do work at a Cougar construction site. Mr. Bruhn ordered supplies for his business from the plaintiff, which delivered the ordered materials to Bruhn's job sites, extended Bruhn credit on an open account, and billed him monthly.

On April 23, 1973, Bruhn obtained a $1,500 check from Cougar Development in partial payment on his contract. As was customary, Cougar issued the check to the order of "Vancouver Interiors and Atlas Building Supply Company" as copayees to insure that Atlas, as Bruhn's supplier, would be paid and also as a precaution against the filing of potential liens against Cougar by Atlas. On the same day, Bruhn presented the check to the defendant for deposit in Vancou-

---

[1] The contract price was $3,987.90.

ver's account.[2] The check contained Vancouver's endorsement and the unauthorized endorsement of Atlas Building Company. The defendant, without ascertaining whether Atlas' endorsement was authorized, credited the Bruhn/Vancouver account with the check's proceeds, which Bruhn then expended to meet Vancouver's payroll.

On April 23, 1973, the date the Cougar check was issued, Bruhn owed the plaintiff $3,322.75 on his open account. Of this amount, approximately $1,811 represented charges for supplies delivered by Atlas for Bruhn to the Cougar site; the balance was for materials delivered for Bruhn to other job sites.

Some time in May 1973, Atlas learned the check had been issued and that it had been deposited without Atlas' endorsement. Plaintiff contacted Bruhn and demanded an explanation. It took no further action at that time, however, since it expected Bruhn would receive sufficient funds to pay his account. Thereafter it became apparent that no money would be forthcoming from Bruhn. As a result, on July 18, 1973, Atlas obtained an assignment from Bruhn for the balance of the funds owed Bruhn on the Cougar contract, $2,120. On that date Bruhn owed the plaintiff $3,760.98 for material and supplies delivered to the Cougar and other job sites.

In the succeeding months Atlas made various attempts to recover on the Bruhn account. No payments were received, either from Cougar or Bruhn. Bruhn subsequently went out of business and the prospect of recovering from Cougar appeared slim. As a consequence, Atlas brought this suit against the defendant to recover the $1,500 paid over its forged endorsement. The defendant was first notified of the forged endorsement on March 21, 1974.

The trial court, sitting without a jury, found in favor of the plaintiff and judgment was entered against the defendant in the sum of $1,500, together with plaintiff's taxable costs of suit.

---

[2]The defendant was both the depositary and payor bank with respect to this transaction.

First Independent Bank appeals from this judgment on two grounds. It first contends the trial court's finding that Atlas did not ratify its unauthorized endorsement is unsupported by substantial evidence. Second, defendant argues that even if no ratification occurred, Atlas should be estopped from asserting this claim against the defendant, since the defendant was unduly prejudiced by Atlas' delay in notification of the forged endorsement.[3]

Ratification is one's affirmance of a prior unauthorized act, done or purportedly done on his account but not originally binding on him, and which is later given effect as to some or all persons as if originally authorized. *National Bank of Commerce v. Thomsen*, 80 Wn.2d 406, 495 P.2d 332 (1972); Restatement (Second) of Agency § 82 (1958). The affirmance necessary to establish a ratification may be shown either by conduct evidencing an election to treat an unauthorized act as authorized, or by conduct which can be explained only if there was an election. Restatement (Second) of Agency § 83 (1958).

The defendant contends Atlas' delay in notifying it of the forged endorsement as well as its acceptance of Bruhn's assignment evidences Atlas' election to ratify the endorsement with respect to the defendant.

Defendant imputes much significance to plaintiff's delay in apprising the bank of the unauthorized endorsement. The mere passage of time, however, will not necessarily establish ratification. *Rayonier, Inc. v. Polson*, 400 F. 2d 909 (9th Cir. 1968) (applying Washington law); Restatement (Second) of Agency § 94, comment *a* (1958). *See also Thieme v. Seattle-First Nat'l Bank*, 7 Wn. App. 845, 502 P.2d 1240 (1972). And the fact that Atlas had knowledge of

---

[3]The arguments are based primarily on RCW 62A.3-404, which states, in part:

"(1) Any unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it; . . .

"(2) Any unauthorized signature may be ratified for all purposes of this Article. Such ratification does not of itself affect any rights of the person ratifying against the actual signer."

the forgery during this period will not establish ratification unless plaintiff delayed its notification under circumstances which require an inference of election to ratify. *Rayonier, Inc. v. Polson, supra; see Thieme v. Seattle-First Nat'l Bank, supra*; Restatement (Second) of Agency § 97, comment *a* (1958); 2 R. Anderson, *Uniform Commercial Code* § 3-404: 7 (2d ed. 1971).

Defendant contends the Bruhn assignment in addition to plaintiff's knowledge of the forgery and its delay in notifying the bank, is the circumstance requiring a finding of ratification. We disagree.

Testimony at trial indicated that Atlas' reason for obtaining the assignment was to recover the sums owed by Bruhn on the entire Bruhn account. It is apparent that it considered action on the check as an alternate avenue of recovery and at no time represented that the assignment constituted a release of Bruhn's liability on the check or that the assignment was taken in consideration for funds represented by the check. Further, the assignment document itself nowhere indicates it was taken in consideration for the $1,500 or as a release of Bruhn's liability. On the contrary, the document states:

> This in no way releases me of my obligation to Atlas Building Supply Company, Inc. to pay the balance of the remainder of the debt incurred on this above named [Cougar] project nor any other outstanding charges on my account.

This evidence, the delay, and the assignment, fall short of the type of circumstances which would compel an inference of election to ratify. *Cf. Rayonier, Inc. v. Polson, supra; Thieme v. Seattle-First Nat'l Bank, supra.* Indeed, the fact that plaintiff asserted its "claim against others is proof [it] did not abandon [its] claim for reimbursement and thus did not intend to ratify the unauthorized endorsement." *Thieme v. Seattle-First Nat'l Bank, supra* at 848. The trial court did not err in holding these facts did not constitute an election to ratify.

Defendant next contends the trial court erred in failing

to find Atlas equitably estopped from asserting its claim on the basis that the bank was unduly prejudiced by Atlas' delay in notification and instituting suit.

■ Defendant first argues that the policy of commercial reasonableness underlying the Uniform Commercial Code, *see* RCW 62A.1-102 and RCW 62A.1-203, requires an estoppel be applied in this case. Defendant's reliance on *Thieme v. Seattle-First Nat'l Bank, supra,* in support of its contention that plaintiff's delay in notification was commercially unreasonable, is misplaced. In *Thieme* the court was concerned with the unreasonableness of a *drawer's* notification of a forged endorsement to its bank, a situation governed by RCW 62A.4-406.[4]

In the present case, we are concerned with the reasonableness of a payee's—Atlas—notification, when the payee was not shown to have been a "customer" within the meaning of RCW 62A.4-406 and RCW 62A.4-104(1) (e),[5] a situation not specifically addressed by the code. *See generally* 47 A.L.R.3d 539 (1973). We do, however, find some guidance in the code. In addition to noncode remedies, *see* RCW 62A.1-103 and RCW 62A.1-106, the Uniform Commercial Code specifically authorizes a payee in the plaintiff's position to pursue various avenues of recovery in an attempt to recoup its losses. *See, e.g.,* RCW 62A.3-404(2); RCW 62A.3-419(1) (c); RCW 62A.3-419(3); RCW 62A.3-804. The effect of holding Atlas' attempt to recover from other par-

---

[4]RCW 62A.4-406 states in part:

"(1) When a bank sends to its customer a statement of account accompanied by items paid in good faith in support of the debit entries or holds the statement and items pursuant to a request or instructions of its customer or otherwise in a reasonable manner makes the statement and items available to the customer, the customer must exercise reasonable care and promptness to examine the statement and items to discover his unauthorized signature or any alteration on an item and must notify the bank promptly after discovery thereof."

[5]RCW 62A.4-104(1) (e) states:

"In this Article unless the context otherwise requires

". . .

" 'Customer' means any person having an account with a bank or for whom a bank has agreed to collect items and includes a bank carrying an account with another bank;"

ties prior to seeking reimbursement from the defendant was commercially unreasonable and therefore justifies an estoppel, would make the alternate remedial avenues authorized by the code a nullity.

 In any event, defendant's equitable estoppel argument must fail. Before an estoppel will be applied, the party seeking to invoke the estoppel must itself be free from fault. *Stohr v. Randle*, 81 Wn.2d 881, 505 P.2d 1281 (1973); *West Coast Airlines, Inc. v. Miner's Aircraft & Engine Serv., Inc.*, 66 Wn.2d 513, 403 P.2d 833 (1965); *Kozak v. Fairway Finance-Seattle, Inc.*, 60 Wn.2d 500, 374 P.2d 1011 (1962); *Rayonier, Inc. v. Polson, supra.* RCW 62A.3-116 provides in part:

An instrument payable to the order of two or more persons

. . .

(b) if not in the alternative is payable to all of them and may be negotiated, discharged or enforced *only* by all of them.

(Italics ours.) This section makes it clear that the Cougar check was properly payable only if it contained both Atlas' and Vancouver Interiors' endorsements. Absent authorization of ratification, Atlas' unauthorized endorsement was, in effect, no endorsement at all. *See* RCW 62A.3-202(2); RCW 62A.1-201(20); RCW 62A.1-201(43); RCW 62A.3-404(1).

RCW 62A.3-419 and the comments thereto indicate that the payee of a forged check has a cause of action for conversion against drawee, payor, or depositary bank. If a depositary bank such as the defendant has failed to act "in accordance with the reasonable commercial standards applicable to the business", RCW 62A.3-419(3), its "measure of liability is presumed to be the face amount of the instrument." RCW 62A.3-419(2). Here defendant had a duty to ascertain whether the Atlas signature was authorized. *Cf. Thieme v. Seattle-First Nat'l Bank, supra; accord, Goodfellow v. First Nat'l Bank*, 71 Wash. 554, 129 P. 90 (1913). Its failure to do so was not in accord with reasonable commer-

374

cial standards of the banking business. *Cf.* RCW 62A.4-401(1). Since the defendant's own conduct was a proximate cause of the check's being cashed, application of an estoppel against the plaintiff would have been inappropriate in this case.

Judgment affirmed.

PETRIE, C.J., and REED, J., concur.