E.S.P., INC., Respondent,

v.

**MIDWAY NATIONAL BANK OF ST. PAUL, Defendant, Appellant.**

**MIDWAY NATIONAL BANK OF ST. PAUL, Third Party Plaintiff, Respondent,**

v.

**FIRST BANK ROBBINSDALE, Third Party Defendant, Appellant.**

No. C1–90–2356.

Court of Appeals of Minnesota.

March 5, 1991.

Review Denied April 29, 1991.

Robert G. Share, Briggs & Morgan, Minneapolis, for E.S.P., Inc., respondent.

John C. Thomas, Shannon M. O'Toole, Oppenheimer, Wolff & Donnelly, Minneapolis, for Midway Nat. Bank of St. Paul, defendant, appellant.

Robert W. Murnane, Murnane, Conlin, White, Brandt & Hoffman, St. Paul, for Midway Nat. Bank of St. Paul, third party plaintiff, respondent.

John C. Thomas, Shannon M. O'Toole, Oppenheimer, Wolff & Donnelly, Minneapolis, for First Bank Robbinsdale, third party defendant, appellant.

Considered and decided by FORSBERG, P.J., and PARKER and AMUNDSON, JJ.

## OPINION

PARKER, Judge.

Midway National Bank of St. Paul and First Bank Robbinsdale appeal from summary judgment for ESP, Inc., imposing absolute liability on Midway for paying a fraudulently endorsed check. First Bank appeals separately from summary judgment for Midway awarding Midway its attorney fees incurred in defending against ESP's conversion claim and in establishing First Bank's warranty liability to Midway. We affirm in part, reverse in part and remand.

## FACTS

ESP, Inc., is a heating and cooling contractor which subcontracted with Mechanical Constructors, Inc., to install a hot water system in a project on which Barr Nelson Company was the general contractor. ESP contracted with Mechanical for $57,600, of which ESP received $40,000.

When the job was completed, Barr Nelson drew a check on its account at Midway National Bank of St. Paul for $30,000, payable to the order of Mechanical and ESP. Barr Nelson delivered the check to Mechanical, which put its stamped endorsement on the check. The check was further endorsed, "ESP Heating Karl Davis." Karl Davis was neither an employee of ESP nor authorized to sign for ESP.

Mechanical deposited the check in its account at First Bank Robbinsdale. First Bank presented the $30,000 check to Midway, which in turn paid the check upon the forged endorsement. ESP sued Midway, the drawee bank, for conversion of $17,600, pursuant to Minn.Stat. § 336.3–419(1)(c) (1990).

Subsequently, Midway commenced a third-party action against First Bank in which it alleged First Bank, as depositary and collecting bank, breached the presentment warranties provided by Minn.Stat. § 336.4–207 (1990). Midway and First Bank then litigated whether Midway had timely commenced its action against First Bank. The trial court concluded that Midway's third-party claim was barred by Minn.Stat. § 541.05 (1988), the six-year limitation statute applicable to contract claims, and entered judgment for First Bank. A divided court of appeals affirmed. *ESP, Inc. v. Midway Nat'l Bank*, 437 N.W.2d 71 (Minn.App.1989), *pet. for rev. granted* (Minn. April 24, 1989). The supreme court reversed, holding the third-party indemnity claim not barred, because the limitation statute does not begin to run against an indemnitee until the indemnitee has sustained loss. *ESP, Inc. v. Midway Nat'l Bank of St. Paul*, 447 N.W.2d 882 (Minn.1989) (*ESP* I) (drawee's loss occurs when it is compelled to pay wronged co-payee). The supreme court then remanded the matter to the trial court to resolve the remaining issues.

While review in the supreme court was pending, ESP moved to amend its complaint to recover the face amount of the check based on its construction of Minn. Stat. § 336.3–419(2). ESP also moved for summary judgment on its claim against Midway. Although technically not then a party, First Bank joined Midway in opposing ESP's motion. The trial court allowed the amendment and held that Midway, as the drawee bank paying on a forged endorsement of a co-payee check, was strictly liable under Minn.Stat. § 336.3–419(2) for "the face amount" of the check. Consequently, the trial court held proof of damages to be unnecessary. Midway and First Bank appeal from this judgment.

After issuance of the supreme court's opinion holding Midway's action for indemnity to have been timely, First Bank agreed to assume Midway's defense against ESP. First Bank and Midway specifically disagreed on the issue of First Bank's liability for Midway's attorney fees incurred in establishing a right to indemnity. Midway moved for an award of attorney fees expended in establishing First Bank's warranty obligation and in defending against ESP's conversion claim. The trial court

granted the motion. First Bank appeals separately from this judgment.

## ISSUES

1. Is a drawee bank strictly liable for a check's face value to a co-payee whose endorsement has been forged?

2. Must a depository bank pay the drawee bank's attorney fees incurred both in defending against the conversion action and in establishing the depository bank's warranty liability?

## ANALYSIS

### Standard of Review

On appeal from an award of summary judgment, the appellate court determines whether any genuine issues of material fact exist and whether the trial court erred in its application of the law. *See* Minn.R. Civ.P. 56.03; *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979). The court considers the evidence in the light most favorable to the nonmoving party. *Nord v. Herreid,* 305 N.W.2d 337, 339 (Minn.1981). When the facts are not in dispute, this court is not bound by the trial court's interpretation of the law. *See A.J. Chromy Constr. Co. v. Commercial Mechanical Serv., Inc.,* 260 N.W.2d 579, 582 (Minn.1977).

## I

■ First Bank and Midway claim the trial court misinterpreted Minn.Stat. § 336.3–419(2) (1990) by imposing absolute liability on Midway for the face amount of the check.

An instrument payable jointly requires endorsement of all the named payees. Minn.Stat. § 336.3–116(b) (1990). Conversion occurs when an instrument, such as a check, is paid on a forged endorsement. Minn.Stat. § 336.3–419(1)(c) (1990). The endorsement was unauthorized; therefore, Davis' endorsement was "wholly inoperative" as to ESP. *See* Minn.Stat. § 336.3–404(1) (1990). Midway, as the drawee bank, converted the check when it paid on the forged endorsement.

The language of the Uniform Commercial Code, adopted by the Minnesota legislature, is unambiguous. Minn.Stat. § 336.3–419(2) addresses the measure of the drawee's liability, stating:

> In an action against a drawee under subsection (1) the measure of the drawee's liability is the face amount of the instrument. In any other action under subsection (1) the measure of liability is presumed to be the face amount of the instrument.

The UCC Comment 4 to that section supports the statute's unequivocality:

> Subsection (2) is new. It adopts the rule generally applied to the conversion of negotiable instruments, that the obligation of any party on the instrument is presumed * * * to be worth its face value. Evidence is admissible to show that for any reason * * * the obligation is in fact worth less, or even that it is without value. In the case of the drawee, however, the presumption is replaced by a rule of absolute liability.

"It is usually more important that a rule of law be settled, than that it be settled right." *DiSanto v. Pennsylvania,* 273 U.S. 34, 42, 47 S.Ct. 267, 270, 71 L.Ed. 524 (1927) (Brandeis, J., dissenting). Particularly is this true in commercial transactions. The Code's principal value is the certainty it provides to business people who must rely on it. Certainty is best served by saying that language is clear when no ambiguity exists. *See* Minn.Stat. § 645.16 (1990).

*Stapleton v. First Sec. Bank,* 219 Mont. 323, 711 P.2d 1364 (1985), is persuasive authority for maintaining certainty in the law. In *Stapleton* the court said the drawee is strictly liable for the face value of the check to the wronged co-payee. The court based its decision not only on case law but also on expert testimony. *Id.* at 325, 711 P.2d at 1366–67. The expert, a practitioner and distinguished legal scholar on the subject of the Code, testified that overwhelming authority establishes the co-payee's interest in a fraudulently endorsed check to be its face amount. *Id.* at 325, 326, 711 P.2d at 1365, 1367. The Minneso-

ta Supreme Court cited *Stapleton* in *ESP I*, but not as to the issue presently before this court. *See ESP*, 447 N.W.2d at 883–84.

In *Tette v. Marine Midland Bank*, 78 A.D.2d 383, 435 N.Y.S.2d 413 (N.Y.App. Div.1981), the wronged co-payee sued the depositary/collection bank on a fraudulently endorsed check. The *Tette* court noted the inconsistency of imposing absolute liability on the drawee but allowing non-drawees to introduce evidence to rebut the presumption that the measure of liability is the face value of the check. *Id.* at 385, 435 N.Y.S.2d at 416. If it is true that the rule regarding the measure of liability treats the drawee more harshly than the depositary bank, then, as the *Tette* court observed, the matter is for the legislature to correct. *Id.*

## II

First Bank argues that the court erroneously awarded Midway all its attorney fees.

■ We think statutory authority exists for awarding Midway its attorney fees incurred in defending against ESP's conversion claim. Minn.Stat. § 336.4–207(3) (1990) provides:

> The warranties and the engagement to honor set forth in the two preceding subsections arise notwithstanding the absence of endorsement or words of guaranty or warranty in the transfer or presentment and a collecting bank remains liable for their breach despite remittance to its transferor. Damages for breach of such warranties or engagement to honor shall not exceed the consideration received by the customer or collecting bank responsible plus finance charges and expenses related to the item, if any.

The UCC Comment 5 to Minn.Stat. § 336.4–207(3) provides:

> The last sentence of subsection (3) provides that damages for breach of warranties or the engagement to honor shall not exceed the consideration received by the customer or collecting bank responsible "plus finance charges and expenses related to the item, if any". The "ex-

penses" referred to in this phrase may be ordinary collecting expenses and in appropriate cases could also include such expenses as attorneys fees.

The Minnesota Supreme Court has given us guidance in *ESP I* on the amount which Midway may recover from First Bank, although the supreme court did not have the issue of attorney fees before it. The court pointed out that the purpose of the Code's endorsement provisions is to place the loss on the party who last dealt with the wrongdoer, since that party is best able to prevent conversion by carefully checking endorsements. For that reason, First Bank, as a result of the warranties arising under Minn.Stat. § 336.4–207, ultimately would be liable to Midway:

> Although Midway, as payor bank, may be liable for conversion, it, in turn, may look to First Bank, the collecting and depositary bank, for restitution.

\* \* \* \* \* \*

Midway seeks and is entitled to reimbursement for losses it sustains because of its conversion liability to E.S.P., Inc. *ESP*, 447 N.W.2d at 883, 885. Midway's losses include its attorney fees incurred in defending against ESP's conversion claim.

■ Midway's indemnification action against First Bank is, however, Midway's own cause of action. Under Minnesota law, when the cause of action directly benefits the plaintiff, as it does here, the plaintiff is entitled to attorney fees only when authorized by a specific statute or contract. *See Lanoue v. Fireman's Fund American Insurance*, 278 N.W.2d 49, 54 (Minn.1979). No express statutory or contractual authority exists for awarding Midway these fees. Because it is contrary to the general rule, Midway may not recover attorney fees incurred in establishing its right to indemnity.

## DECISION

The trial court correctly interpreted Minn.Stat. § 336.3–419(2) as imposing absolute liability on Midway. The trial court erred, however, in awarding Midway attorney fees incurred in its indemnity claim

against First Bank. Midway may recover only those attorney fees related to defending against ESP's conversion claim.

Affirmed in part, reversed in part and remanded for an appropriate order regarding attorney fees.