**GULF FREEWAY LUMBER COMPANY, Appellant,**

v.

**HOUSTON INVESTMENT REALTY TRUST et al., Appellees.**

**No. 329.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

March 4, 1970.

Gerald S. Gordon, Strickland & Gordon, Houston, for appellant.

Wm. E. Hall, Jr., Joel W. Cook, Schlanger, Cook & Cohn, Houston, for appellees.

BARRON, Justice.

This appeal has been perfected by Gulf Freeway Lumber Company, plaintiff in the trial court, from a take-nothing judgment rendered in favor of defendants, Houston Investment Realty Trust and Benjamin D. Thompson. The parties will sometimes be referred to by their trial court designations.

Prior to November 28, 1966, plaintiff, acting through its president, Robert E. Pine, discussed with Benjamin D. Thompson, a trustee of the defendant Trust, the possibility of selling the White House Apartments owned by the plaintiff to the defendant Trust. The apartment project was in financial difficulty and notices had

been posted for a Trustee's sale to be held on December 6, 1966. A typewritten memorandum on Thompson's stationery, dated November 28, 1966, contains details of the proposed sale and bears the initials "B.D. T." It is disputed as to whether these are the initials of the defendant Thompson. Minutes of a board of trustees meeting of the defendant Trust dated November 29, 1966, contains the following resolution:

"RESOLVED upon written approval of the Standing Real Estate Committee of the H. I. R. T., authorization can be given Dr. Thompson to act on the Trust's behalf and purchase the White House Apartments of Houston. However, the Real Estate Committee at their discretion, can bring the project back before the Trustees for further discussion."

The plaintiff states, contrary to the position of the defendants, that such limitations on the contractual agency of Thompson were not made known to the plaintiff.

On December 1, 1966, Pine and Thompson signed an earnest money contract which was deposited along with a check for $1,000 with American Title Guaranty Company as escrow agent. The $1,000 was designated to be "liquidated damage." Thompson testified that he told Pine at the time of their earlier conversations and on December 1, 1966 that Thompson could not finalize the purchase without the approval of the Real Estate Committee of the Trust. Between December 1 and December 6 both plaintiff and defendant made some business preparation for the closing of the contract of sale which was scheduled for December 6. Plaintiff made preparations for the conveyance of corporate property and the defendant began an inventory of the apartment project, verified the balance on debts owed or assumed and secured cashier's checks to various creditors and lien holders. On December 6, 1966, the plaintiff was informed by the Real Estate Committee of the defendant Trust that the purchase would not be made. Afterwards, plaintiff received an offer to purchase the apartment project from another trustee of defendant Trust. This offer was smaller than the one contained in the earnest money contract but still substantially exceeded the encumbrance on the real estate. Plaintiff rejected this offer and was unable to sell or refinance the apartment project. When the property was sold at the next statutory trustee's sale date the plaintiff lost whatever equity remained in the property. Pursuant to Rule 296, T.R.C.P., the trial court, upon request of the plaintiff, entered the following relevant findings of fact and conclusions of law:

"FINDINGS OF FACT

I

"* * * Thompson advised Pine that the purchase would require approval by the board before it could be completed.

II

"On November 29, the Board of Trustees of the trust met and authorized Thompson to negotiate the purchase upon the written approval of the Standing Real Estate Committee of the trust. Ray Bierschwale and Clifford Jackson with others, composed the committee.

III

"On December 1, 1966, Thompson advised Pine of the action of the board and that although the committee had not yet approved the transaction, he felt that they would do so. It was thereupon agreed that the contract of sale would be signed and earnest money deposited by Thompson on behalf of the trust and that Thompson would undertake to secure the approval of the Real Estate Committee.

IV

"On December 1, 1966, an agreement in form and substance as set out in Exhibit

'A' hereto was signed by Thompson and Pine, and said agreement with One Thousand Dollars ($1,000.00) earnest money was deposited with American Title Guaranty Company. The Title Company furnished a title report making several requirements which were never satisfied.

V

"A study of the property was made by Bierschwale and Jackson and they refused to approve the transaction; no written or other type of approval of the purchase was ever given by the Real Estate Committee of the Trust.

VI

"Thompson vigorously sought the approval of the project by the committee * * * At the Title Company, Bierschwale and Jackson made it clear to Thompson that the committee would not approve the transaction, and Thompson thereupon advised Pine that the purchase would not be made by the trust.

VIII

"No proof of the actual market value of the property on December 6, 1966, or at any other time was offered by plaintiff.

IX

"* * * If the trust had been willing to proceed with the purchase * * * title difficulties could not have been eliminated on or before December 6, 1966, the last day for the making of payments required by the contract. No effort was thereafter made by plaintiff to eliminate these requirements.

XI

"Plaintiff tried the case upon the theory that Thompson's notice to Pine on De-

cember 6, 1966, that the trust would not permit him to close the purchase was an anticipatory breach of the contract and that this excused plaintiff's failure to cure its title.

"The court finds as the ultimate issues:

"1. The execution of the contract was never authorized by the trust.

"2. There was no representation to Gulf Freeway Lumber Company by Dr. Thompson that he was authorized to bind the trust to the contract.

"3. The contract was delivered by Thompson to Pine on condition that the transaction would be closed only if and when approved by the trust."

"CONCLUSIONS OF LAW

"1. To the extent that the above findings may include conclusions of law, they are hereby incorporated herein as such.

"2. The contract was never an effective agreement on behalf of the Houston Investment Realty Trust, and the trust is in no respect liable on said contract or for any claimed breach of it, whether actual or anticipatory.

"3. No actual or constructive false representation as to his authority was made by Dr. Thompson in connection with the execution of the contract.

"4. There was no unconditional delivery of the contract to Gulf Freeway Lumber Company.

"5. Plaintiff has not shown that any legally measurable actual damages have been sustained by plaintiff in the transaction.

"6. The only damages which would have been recoverable for a breach of the claimed contract would have been the

One Thousand Dollar ($1,000.00) liquidated damages stipulated by the contract * * *."

Where a grantor delivers a deed or such instrument as in this case to a grantee named therein with the intention that it pass from his control, and with an oral agreement that under certain contingencies it shall become effective without any further action on his part, such delivery or deposit constitutes an immediate, absolute transfer of title, and in such a case parol evidence is not admissible to show that the delivery was conditional. Holt v. Gordon, 107 Tex. 137, 174 S.W. 1097. However, as in the instant case, the delivery of such an instrument to the grantee does not operate as an absolute delivery where it is agreed at the time of such delivery that the grantee is to deposit the instrument as an escrow with a third person. Bell v. Rudd, 144 Tex. 491, 191 S.W.2d 841. And see Puckett v. Hoover, 146 Tex. 1, 202 S.W.2d 209, 211, and Chasteen v. Miller, 349 S.W.2d 772, 775, (Tex.Civ. App.), writ ref., n.r.e.

Plaintiff's first point of error complains that the trial court erred in finding that Thompson conditioned execution and delivery of the contract of sale upon approval of the defendant Trust's real estate committee. The first point of error also complains of the findings of the trial court that the limitation on Thompson's authority was communicated to plaintiff and that the defendant's subsequent activities did not create an estoppel. The second and third points of error state respectively that there is no evidence and insufficient evidence to support the findings referred to in point number one. The first three points of error will be considered together. Thompson testified consistently during the trial that he at no time intimated to Pine that Thompson could close the sale without approval of the real estate committee of the Trust. Mrs. Thompson and Mrs. Childress, an employee of

Thompson, both testified that they were present at different times when Pine was told by Thompson that final approval had to come from the Trust. Although Pine testified that Thompson stated he could act for the Trust, Pine also admitted that he knew that the proposed sale would have to be presented to the Trust. Such procedure would have been consistent with the resolution of the Trust on their meeting of November 29, 1966 and also with provision in the declaration of trust under which Houston Investment Realty Trust was established. The delivery of the contract of sale by Thompson is not inconsistent with the conditions in evidence above. Nor are the activities of defendant in preparation for possible closing of the sale on December 6, 1966 sufficient to estop them from claiming that Thompson could not finalize the transaction without the Trust's approval. The trial court found that Thompson vigorously sought approval of the sale by the committee. Findings by a trial court in a non-jury case are binding upon an appellate court when they are supported by sufficient evidence. This is true even if the appellate court might have reached a different conclusion. Arnold v. Caprielian, 437 S.W.2d 620, (Tex.Civ.App.1969, writ ref., n.r.e.); American Bankers Ins. Co. v. Farley, 403 S.W.2d 545, (Tex.Civ.App. 1966, no writ hist.); Dyer v. Caldcleugh & Powers, 392 S.W.2d 523, (Tex.Civ.App. 1965, writ ref., n.r.e.); Campbell v. Swinney, 328 S.W.2d 330, (Tex.Civ.App.1959, writ ref., n.r.e.); 4 McDonald, Texas Civil Practice, 1301, Sec. 16.10. From the record before this Court there is ample evidence to support the complained of findings by the trial court. Accordingly plaintiff's points of error one, two and three should be overruled.

Plaintiff's fourth point of error states that the trial court erred in holding that the defendant Trust did not anticipatorily breach its contract of sale. There could be no breach, anticipatory or otherwise, of the contract of sale since under

the findings of the trial court affirmed above, the contract was conditioned on the approval of the Trust. If there was a breach of the earnest money contract the trial court found that $1,000 in liquidated damage had been provided for in said contract and that sum was the total of what could be recovered under the contract. There being no breach of the agreement because it was found under ample evidence to be a conditional agreement, and the only possible recovery for failure to execute the contract being the $1,000 earnest money provided for in the contract, plaintiff's fourth point is overruled.

■ Plaintiff's fifth point of error complains of the trial court's finding, as a matter of law, that plaintiff could not have performed under the contract. Evidence was contradictory as to whether the plaintiff could have fulfilled his obligation in relation to performance of the alleged contract. Since the ability of the plaintiff to perform, however, is of consequence only in relation to fixation of a duty to perform on the defendant, and the court, upon ample evidence, found that the trust had only a duty to perform conditioned upon final approval of the trust committee, the fifth point of error is immaterial to the judgment and is overruled.

■ The defendant's point of error number six states that "The Trial Court erred, in the alternative, in not granting judgment against B. D. Thompson, as Agent of Houston Investment Realty Trust, his principal, in the event he contracted beyond his limited authority." Defendant states his contention as follows:

"The position that Appellant takes is that if Thompson, as agent, negotiated a contract in behalf of Houston Invest-

ment Realty Trust, and it ultimately appears that he was not authorized by the latter to enter into the agreement, he will then be liable to Appellant for damages for the breach of the implied warranty of authority to contract."

As authority for this contention plaintiff cites 2 Tex.Jur.2d 606, Agency, Sec. 157. This section also states the following:

"In this connection, it is important to note that in such an action against the agent, the claim of the plaintiff is based not on the contract itself, but on the agent's implied warranty of authority to contract and the damages flowing from his breach of warranty or deceit. However, of course, no such breach of warranty can take place if the agent informs the other party to the agreement that his principal has not authorized him to make it."

In the instant case the court found, from sufficient evidence, that Thompson warranted no absolute authority to contract, but conditioned closing of the transaction on the account of the Trust. The trial court also found that "there was no representation to Gulf Freeway Lumber Company by Dr. Thompson that he was authorized to bind the trust to the contract." Being fully apprised of the actual authority under which agent Thompson was attempting to close the transaction, Pine cannot hold Thompson personally liable for any damage he may have incurred. Heard v. Clegg, 144 S.W. 1145, (Tex.Civ.App. 1912, err. ref.); First State Bank of Roby v. Hilbun, 61 S.W.2d 521, (Tex.Civ.App. 1933, no writ hist.). Accordingly plaintiff's point of error number six is overruled.

The judgment is affirmed.