[No. 22112–4–I.   Division One.   May 30, 1989.]

PUGET SOUND BANK, *Respondent,* v. WAYNE R.
RICHARDSON, *Appellant.*

*Barbetta Meyer Ralphs,* for appellant.

*James P. Davis* and *Short, Cressman & Burgess,* for
respondent.

WINSOR, J.—Wayne R. Richardson appeals from a judg-
ment entered in Puget Sound Bank's (the Bank) action to
recover funds Richardson removed from his minor
daughter's guardianship accounts. We affirm.

Richardson was appointed guardian for his minor daughter, C., in 1979. Proceeds of a wrongful death action concerning C.'s mother comprised the principal asset of C.'s estate. As guardian, Richardson deposited these proceeds with the Bank into a blocked passbook savings account and two blocked certificates of deposit (CD). Withdrawals from these deposits were not permitted without court order.

In early 1984, without court order, Richardson withdrew accrued but unpaid interest from one of the blocked CD's and deposited approximately $3,900 of those funds into a new, unblocked account. The new account was in C.'s name "by Wayne R. Richardson." Richardson subsequently instructed the Bank to automatically transfer interest accruing on the blocked CD to the new, unblocked account. Richardson treated the unblocked account as his own, and without court order, withdrew from it a total of $11,029 in 1984 and 1985.

Richardson was eventually removed as guardian of C.'s person and estate, and C.'s maternal aunt and uncle (Miller) were named successor guardians. Miller inventoried C.'s assets and discovered Richardson's unauthorized transfers and withdrawals from C.'s guardianship accounts. Miller sought recovery of the misappropriated funds from the Bank. Before Miller filed suit, the Bank entered into an agreement under which the Bank reimbursed C. for Richardson's unauthorized withdrawals and C., through Miller, assigned "to the Bank all of her claims against Wayne R. Richardson with regard to the guardianship accounts held by the Bank."

The Bank then brought this action against Richardson. The matter was referred to mandatory arbitration. The arbitrator ruled in the Bank's favor. Pursuant to MAR 7.1 and King County Local Mandatory Arbitration Rules (LMAR) 7.1, Richardson sought a trial de novo in superior court. There, the Bank moved for summary judgment. The trial court entered summary judgment in its favor and awarded the Bank its costs and attorney fees.

## The Bank's Right to Recovery

Richardson contends that the Bank's own acts, particularly its negligence in permitting him to make unauthorized withdrawals and transfers from the blocked guardianship accounts, preclude it from seeking recovery from him. We disagree.

Richardson first argues preclusion under several negligence–related theories he entitles estoppel, reliance, breach of fiduciary duty, and breach of banking regulations and internal policies.[1] Each of these theories ultimately rests upon principles of equitable estoppel. Due to his own misdeeds, Richardson is not in a position to rely on these principles.

Parties seeking to invoke equitable estoppel must be free from fault. *E.g., Ward v. Richards & Rossano, Inc.,* 51 Wn. App. 423, 434, 754 P.2d 120, *review denied,* 111 Wn.2d 1019 (1988); *In re Estate of McKiddy,* 47 Wn. App. 774, 780, 737 P.2d 317 (1987). They "must, at a minimum, make a showing of blamelessness or reasonable conduct under the circumstances or [they are] without standing to assert estoppel as a defense." *Stohr v. Randle,* 81 Wn.2d 881, 885, 505 P.2d 1281 (1973) (quoting *Kozak v. Fairway Finance–Seattle, Inc.,* 60 Wn.2d 500, 504, 374 P.2d 1011 (1962)). Richardson, who violated his guardianship requirements by asking the Bank to set up an unblocked account, and by treating that account as his own, has not made this requisite minimum showing.

Richardson also contends that the Bank is barred from seeking recovery from him because it did not notify him of its settlement negotiations with Miller, the successor guardian. Richardson offers no legal support for this novel proposition, and we are aware of none. Indeed, had Miller's claim against the Bank resulted in litigation, neither Miller

---

[1]Richardson also alleges that the withdrawals were made to benefit C., and thus were not wrongful; and that the assignment of rights under which the Bank made claim against him is invalid. Neither of these allegations was made to the trial court, and neither is supported by evidence in the record. Issues not raised in the trial court cannot be raised for the first time on appeal. RAP 2.5(a), 9.12.

nor the Bank would have been required to join Richardson as codefendant or third party defendant. *In re Johns–Manville Corp.*, 99 Wn.2d 193, 198, 660 P.2d 271 (1983) (a joint tortfeasor is not an indispensable party); CR 14(a) (joinder of third party defendant is not mandatory).

■ Finally, Richardson claims that the Bank waived its right to bring this action. However, his briefs contain no argument supporting a waiver theory. Assignments of error unsupported by argument or authority are deemed waived. *E.g., Smith v. King,* 106 Wn.2d 443, 451–52, 722 P.2d 796 (1986). We therefore do not consider this contention.

### ATTORNEY FEES AWARD

Richardson also contends that the trial court erred in awarding the Bank its attorney fees pursuant to MAR 7.3 because the Bank did not prevail in a trial de novo, but instead prevailed in a summary judgment proceeding. Richardson argues that a proceeding is not a trial de novo unless the whole evidentiary case presented in the lower forum is reviewed.

■ MAR 7.3 specifies the conditions for awarding attorney fees in an appeal from a mandatory arbitration award:

> The court shall assess costs and reasonable attorney fees against a party who appeals the award and fails to improve the party's position on the trial de novo. The court may assess costs and reasonable attorney fees against a party who voluntarily withdraws a request for a trial de novo.

The purpose of this provision is to discourage meritless appeals and to thereby reduce court congestion. *Christie–Lambert Van & Storage Co. v. McLeod,* 39 Wn. App. 298, 302–03, 693 P.2d 161 (1984). This purpose is served regardless of whether the appeal from arbitration is resolved by summary judgment or by a full trial. *Christie–Lambert,* at 302–03.

We are not persuaded by Richardson's argument that a trial de novo should be distinguished from a summary judgment for purposes of awarding attorney fees under

MAR 7.3. A trial is a judicial examination and determination of legal and factual issues between parties to an action. Black's Law Dictionary 1348 (5th ed. 1979). This necessarily includes a summary judgment proceeding, which is a judicial examination of legal and possible factual issues. *See* CR 56(c). A trial de novo is simply a proceeding in which legal and/or factual issues are judicially examined as if no prior proceeding had occurred. *See* Black's Law Dictionary, *supra* at 1349. The summary judgment in this case falls within this definition.

We hold that for purposes of MAR 7.3, a summary judgment is a trial de novo. The trial court properly awarded the Bank its reasonable attorney fees.

The judgment is affirmed. Pursuant to RAP 18.1, MAR 7.3, and *Christie–Lambert Van & Storage Co. v. McLeod, supra* at 309, the Bank is awarded its appellate costs and attorney fees in the amount of $2,984.14.

GROSSE, A.C.J., and WEBSTER, J., concur.